## NOT FOR PUBLICATION WITHOUT THE
## APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2704-18T1

DAVID GUIRGUESS,

    Plaintiff-Appellant,

v.

PUBLIC SERVICE ELECTRIC
AND GAS COMPANY, PUBLIC
SERVICE ELECTRIC AND GAS
SERVICES CORPORATION and
RICHARD BLACKMAN,

    Defendants-Respondents.

_____

Argued October 16, 2019 – Decided December 10, 2019

Before Judges Fisher, Accurso, and Gilson.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-3041-17.

Darren C. Barreiro argued the cause for appellant (Greenbaum, Rowe, Smith & Davis, LLP, attorneys; Darren C. Barreiro, of counsel and on the briefs; Irene Hsieh, on the briefs).

Amanda Kirsten Caldwell argued the cause for respondents (Fisher & Phillips LLP, attorneys; Amanda

Kirsten Caldwell, of counsel and on the brief; David J. Treibman, on the brief).

PER CURIAM

Plaintiff David Guirguess appeals from a February 4, 2019 order granting defendants' motion to compel arbitration and dismissing plaintiff's complaint with prejudice. We affirm the portion of the order compelling arbitration, but remand with direction that a new order be entered staying the action pending the arbitration.

I.

In a letter dated December 17, 2008, plaintiff was offered employment for the position of "Nuclear Shift Supervisor" with "PSEG Power Nuclear LLC" (PSEG Power), a subsidiary of Public Service Enterprise Group Incorporated (PSEG). The offer stated that plaintiff was joining PSEG, and that his "employment with PSEG P[ower] is and will be considered at-will . . . ." Plaintiff accepted the offer.

On the same day plaintiff countersigned the offer letter, he signed a mandatory arbitration agreement (the Arbitration Agreement). Plaintiff agreed to arbitrate all disputes related to his employment or termination of his employment with "PSEG." The Arbitration Agreement also stated that "all disputes arising out of or relating to this [Arbitration] Agreement or my

employment . . . will . . . be resolved through binding arbitration administered by the American Arbitration Association (AAA) in accordance with" certain AAA rules and "the United States Arbitration Act." Specifically, the Arbitration Agreement stated:

> As a condition of my employment, I agree to waive my right to a jury trial in any action or proceeding related to my employment with PSEG. I understand that I am waiving my right to a jury trial voluntarily and knowingly, and free from duress or coercion. I understand that I have a right to consult with a person of my choosing, including an attorney, before signing this document. I agree that all disputes relating to my employment with PSEG or termination thereof, whether based upon statute, regulation, contract, tort or other common law principles, shall be decided by an arbitrator through the Labor Relations Section of the American Arbitration Association.
>
> Any and all disputes arising out of or relating to this Agreement or my employment, other than an unemployment or workers compensation claim, will, at the demand of either me or PSEG, whether made before or after the institution of any legal proceeding, be resolved through binding arbitration administered by the American Arbitration Association (AAA) in accordance with the Employment Dispute Resolution Rules of the AAA and with the United States Arbitration Act. The arbitration will be conducted before one arbitrator in Newark, New Jersey or by mutual consent at another agreed upon location. If the parties cannot agree on the arbitrator within 30 days after the demand for an arbitration, then either party may request the AAA to select the arbitrator, which selection will be deemed acceptable to both parties. To

A-2704-18T1

the maximum extent practicable, the arbitration proceeding will be concluded within 180 days of filing the demand for arbitration with the AAA. All costs and fees of the arbitration will be shared equally by the parties, unless otherwise awarded by the arbitrator. Each party agrees to keep all such disputes and arbitration proceedings strictly confidential except for disclosure of information required by law. Each party further agrees to abide by and perform any award rendered by the arbitrator, and that a judgment of a court of competent jurisdiction may be entered on the award.

Three years later, on May 19, 2011, plaintiff accepted the position of "Project Manager (Remediation) at Corporate Headquarters-Newark, NJ." The offer letter was sent on letterhead from "PSEG Services Corporation" and stated that plaintiff's employment was "with PSE&G." The letter did not define "PSE&G." The offer letter also stated that plaintiff "will continue to be eligible to participate in PSEG's discretionary Performance Incentive Plan (PIP) under the terms and conditions of that plan." The May 19, 2011 letter did not mention arbitration and it did not enclose an arbitration agreement.

Five years later, on September 9, 2016, Richard Blackman, a senior project manager at PSE&G sent plaintiff a letter, on PSE&G letterhead, informing him that his employment was terminated effective that day. The letter stated that plaintiff was being terminated because he had submitted inaccurate records concerning the hours he worked, he was "attending to a side business

when [he] should have been working[]," he falsified expense reports, and he had removed sign-in sheets from a project site he was managing.

In May 2017, plaintiff filed a complaint against Public Service Electric & Gas Company (PSE&G), PSEG Services Corporation (PSEG Services), and Richard Blackman. Plaintiff asserted that he had been employed by PSE&G and PSEG Services, which he identified collectively as "PSE&G."[1] He then alleged that his employment had been terminated in violation of the New Jersey Conscientious Employee Protection Act (CEPA), N.J.S.A. 34:19-1 to -14, the New Jersey Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, and the common law.

Defendants filed a motion to compel arbitration, contending that the Arbitration Agreement plaintiff signed in 2008 applied to plaintiff's employment with PSE&G and PSEG Services. Without hearing oral argument or giving reasons for its decision, the trial court granted defendants' motion and, on September 15, 2017, entered an order compelling arbitration and dismissing plaintiff's complaint with prejudice.

---

[1] In his complaint, plaintiff misnamed PSEG Services as Public Service Electric and Gas Services Corporation.

Plaintiff appealed and we vacated the September 15, 2017 order. We explained that the trial court needed to hear oral argument and give reasons for its decision. Accordingly, we remanded and "directed [the trial court] to reconsider defendants' motion with oral argument and enter a new order, together with a written or oral statement of reasons in conformity with Rule 1:7-4." Guirguess v. Pub. Serv. Elec. and Gas Co., No. A-0511-17 (App. Div. July 30, 2018) (slip op. at 6).

After hearing oral argument following the remand, the court again granted the motion to compel arbitration and explained its reasons on the record. Following extensive questioning of the parties' counsel, the trial court held that the 2008 Arbitration Agreement covered PSEG and its subsidiaries, including PSE&G and PSEG Services. The court also held that when plaintiff changed jobs in May 2011, from PSEG Power to PSE&G, that change was effectively a "transfer" from one PSEG subsidiary to another because plaintiff continued to receive PSEG benefits. Consequently, the trial court ruled that the 2008 Arbitration Agreement governed plaintiff's termination from his employment in 2016. The court memorialized its decision in an order entered on February 4, 2019. That order compelled arbitration and dismissed plaintiff's complaint with prejudice. Plaintiff now appeals from the February 4, 2019 order.

II.

On this second appeal, plaintiff makes three arguments. First, plaintiff asks us to exercise our original jurisdiction and to hold that the Arbitration Agreement does not govern the claims in his complaint. Second, plaintiff argues that the Arbitration Agreement is unenforceable because it is contrary to a newly-enacted provision of LAD. Finally, he contends that the Arbitration Agreement does not govern his claims because the Arbitration Agreement was with PSEG Power and it does not apply to his employment with PSE&G and PSEG Services. In that regard, plaintiff asserts that, at best, the Arbitration Agreement is ambiguous, and therefore too vague to enforce, because it failed to state expressly that it applied to affiliates of PSEG Power.

We use a de novo standard of review when determining the enforceability of arbitration agreements. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 186 (2013)). The validity of an arbitration agreement is a question of law, and we conduct a plenary review of such legal questions. Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) (citing Kieffer v. Best Buy Stores, L.P., 205 N.J. 213, 222-23 (2011)); Barr v. Bishop Rosen & Co., Inc., 442 N.J. Super. 599, 605 (App. Div. 2015) (citing Hirsch, 215 N.J. at 186).

A-2704-18T1

The Arbitration Agreement signed by plaintiff stated that all disputes concerning his employment or its termination will be "resolved through binding arbitration administered by the [AAA] in accordance with the Employment Dispute Resolution Rules of the AAA and with the United States Arbitration Act." The "United States Arbitration Act" obviously refers to 9 U.S.C. §§ 1 to 16, which courts usually refer to as the Federal Arbitration Act (the FAA). The FAA applies to a "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . ." 9 U.S.C. § 2. The FAA and "the nearly identical New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -32, enunciate federal and state policies favoring arbitration." Atalese, 219 N.J. at 440 (citations omitted).

Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract. 9 U.S.C. § 2; NAACP of Camden Cty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011) (citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010)). "[T]he FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity

for the revocation of any contract.'" Atalese, 219 N.J. at 441 (citations omitted) (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

In determining whether a matter should be submitted to arbitration, a court must evaluate (1) whether a valid agreement to arbitrate exists, and (2) whether the dispute falls within the scope of the agreement. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985); Martindale, 173 N.J. at 92. The FAA, however, allows the second question − the threshold arbitrability question − to be delegated to the arbitrator. Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S. Ct. 524, 529-30 (2019).

The Arbitration Agreement signed by plaintiff is valid. It was the product of mutual assent and it clearly stated that the parties were giving up their right to pursue all employment-related claims in court and, instead, agreed to arbitrate those claims before an AAA arbitrator. See Atalese, 219 N.J. at 442 ("An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" (quoting NAACP, 421 N.J. Super. at 424)).

Contrary to plaintiff's argument, the Arbitration Agreement is neither invalid nor unenforceable under the recent amendments to LAD. Effective March 18, 2019, the Legislature amended LAD to add several sections,

including a section stating that "[a] provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable." N.J.S.A. 10:5-12.7(a) (codifying L. 2019, c. 39, § 1(a)). Plaintiff argues that the amendment to LAD prohibits an arbitration agreement that prevents LAD claims or CEPA claims from being resolved in a court because one of the procedural rights under LAD and CEPA is the right to pursue an action in court. See N.J.S.A. 10:5-13; N.J.S.A. 34:19-5.

The 2019 amendments to LAD apply only prospectively. L. 2019, c. 39, § 6, states: "[t]his act shall take effect immediately and shall apply to all contracts and agreements entered into, renewed, modified, or amended on or after the effective date." As noted earlier, the effective date of the amendments to LAD was March 18, 2019. The Arbitration Agreement signed by plaintiff was entered into on December 20, 2008. Accordingly, the new section of LAD does not apply to or govern the Arbitration Agreement at issue here.

Despite that clear language, plaintiff argues that prospective application of the new sections of LAD does not apply to N.J.S.A. 10:5-12.7. Plaintiff also asserts that N.J.S.A. 10:5-12.7 should be applied under the "time of decision rule" because the amendment took effect before this appeal was decided. We

reject both those arguments as inconsistent with the plain language establishing an effective date of March 18, 2019, for the amendments and the legislative mandate for prospective application. See L. 2019, c. 39, § 6.

Plaintiff also argues that the Arbitration Agreement does not cover his dispute with PSE&G. That issue, however, is a threshold arbitrability question. The Arbitration Agreement delegated the threshold question of the scope of the agreement to the arbitrator. In that regard, the Arbitration Agreement stated "all disputes . . . relating to this Agreement . . . will . . . be resolved through binding arbitration . . . ." The Arbitration Agreement also stated that the arbitration would be conducted in accordance with the "Employment Dispute Resolution Rules" of the AAA. Those rules state that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." American Arbitration Association (AAA), Employment Dispute Resolution Rule 6(a) (Nov. 1, 2009); see Oracle Am., Inc. v. Myriad Group A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) (noting that "[v]irtually every [federal] circuit [court of appeals] to have considered the issue has determined that incorporation of the [AAA] arbitration rules [in an arbitration agreement] constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability" (citations

11

omitted)); Chesapeake Appalachia, LLC v. Scout Petroleum, LLC, 809 F.3d 746, 763-64 (3d Cir. 2016).

Our Supreme Court has stated that "[t]he FAA constitutes the supreme law of the land regarding arbitration." Goffe, 238 N.J. at 207 (citing Southland Corp. v. Keating, 465 U.S. 1, 10 (1984)). Moreover, the Court acknowledged "that when the parties' contract delegates the question of the arbitrability of a particular dispute to an arbitrator, a court may not override the contract, even if the court thinks that the argument that the arbitration agreement applies to a dispute is 'wholly groundless.'" Id. at 211 (quoting Schein, 586 U.S. at ___, 139 S. Ct. at 528-29).

In summary, the Arbitration Agreement is valid and delegates the threshold question of the scope of the arbitration to the arbitrator. Therefore, under the FAA the parties are obligated to proceed to arbitration. 9 U.S.C. §§ 3, 4; Goffe, 238 N.J. at 207, 211.

We disagree with the trial court in one respect. The trial court should not have dismissed the complaint with prejudice. Instead, the FAA provides that a party may request a stay if a court action has been commenced and that action involves "any issue referable to arbitration under an agreement in writing for such arbitration . . . ." 9 U.S.C. § 3. Accordingly, we remand with direction

12

that the trial court enter a new order. That order will provide that plaintiff's claims in his complaint are stayed pending arbitration, and the parties are to proceed to arbitration in accordance with the Arbitration Agreement. The arbitrator will then decide if the Arbitration Agreement governs plaintiff's termination from PSE&G. If so, the arbitrator will then decide the merits of plaintiff's claims. If the arbitrator determines that plaintiff's claims do not fall within the scope of the Arbitration Agreement, then the stay can be lifted and the merits of plaintiff's claims will be decided in the trial court.

Finally, our ruling that the Arbitration Agreement is valid and that the parties must proceed to arbitration moots plaintiff's argument concerning our exercise of original jurisdiction. Consequently, we do not reach that issue.

Affirmed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION